UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY,<br>Plaintiff,<br><br>v.<br><br>DESHANNA PALMER et al.,<br><br>Defendant. | CASE NO. C23-00162-KKE<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

On July 23, 2020, Joshua Bova ("Bova") applied in writing to American General Life Insurance Company ("American General") for a life insurance policy. In completing the application, Bova represented that he had truthfully answered questions regarding his medical and criminal history. After Bova passed away within the policy's contestability period, American General conducted a contestable claim review and discovered that Bova had made numerous material misrepresentations about his health and background. American General now seeks to rescind the policy and has filed this action against its sole beneficiary, Deshanna Palmer. Because American General has demonstrated that Bova knowingly made false statements that materially affected American General's assumption of risk in issuing the policy, and that Bova did so with intent to deceive, the Court grants the motion and declares the policy void.

## I. FACTS[1]

### A. Bova Obtained a Life Insurance Policy from American General.

On July 23, 2020, Bova applied in writing to American General for a life insurance policy ("Application"). Dkt. No. 28-3 at 19.[2] On Part A of the Application, Bova reported he had never used tobacco products and that he had never been convicted of a felony or misdemeanor. *Id.* at 10, 12. Bova signed Part A of the Application, certifying "that the information supplied has been truthfully and accurately recorded." *Id.* at 13. On Part B of the Application, Bova asserted he had never "used cocaine, heroin, methamphetamine, hallucinogens, stimulants or any other habit-forming drug except as prescribed by a medical professional." *Id.* at 17. Bova also asserted he had never used cannabis or "a controlled substance or prescription drug in a manner other than prescribed by a physician." *Id.* In addition, Bova asserted that, in the past five years, he had not been "hospitalized, consulted a member of the medical profession or had any illness, injury or surgery." *Id.* Finally, the page where Bova signed part B of the Application contained the following agreement and acknowledgment: "I understand that any misrepresentation contained in this application and relied on by the Company may be used to reduce or deny a claim or void the policy if: (1) such misrepresentation materially affects the acceptance of the risk; and (2) the policy is within its contestable period." *Id.* at 19.

Based on Bova's Application, including the answers and representations detailed above, American General issued a term life insurance policy to Bova with a face amount of $750,000 ("Policy"). Dkt. No. 28-3 ¶¶ 12–13; Dkt. No. 28-2 at 9. On November 2, 2020, Bova executed a

[1] Because Palmer did not respond to American General's motion, the Court considers the facts asserted by American General to be undisputed. Fed. R. Civ. P. 56(e)(2).

[2] This Order refers to the parties' briefing using the CM/ECF page numbers.

Policy Acceptance and Amendment of Application ("Policy Acceptance") that contained the following representation:

> I represent, on behalf of myself and any person who may have been proposed for insurance, that to the best of my knowledge and belief:
>
> (1) There have been no changes to my occupation, nor have I become unemployed since the date of the application; or
>
> (2) Neither I nor any other proposed insured has, since the date of the application:
>
> a. Consulted a licensed health care provider or received medical or surgical advice or treatment; or
>
> b. Acquired any knowledge or belief that any representation in the application, including information provided or an answer to a question, is now inaccurate, incomplete, or untrue.

*Id.* at 21. Bova also indicated that he understood and agreed that the Policy was "Standard Plus Non Tobacco premium class." *Id.* The Policy contained a two-year contestability period.[3] *Id.* ¶ 14; Dkt. No. 28-2 at 9.

Bova passed away on November 14, 2021, within the contestability period.[4] Dkt. No. 28-3 ¶ 14; Dkt. No. 28-2 at 9.

**B. American General Conducted a Contestable Claim Review.**

American General initiated a contestable claim review and obtained Bova's medical records, the police report relating to his death, and his criminal history. Dkt. No. 28-3 ¶ 15. These documents revealed previously undisclosed tobacco use, drug use, emergency room visits, and criminal history. Dkt. No. 28-3, ¶ 16.

---

[3] A contestability period is a window of time following issuance of a policy during which a life insurance provider can investigate and deny death claims after an insured's death, including investigation of whether the information reported on an application was accurate. *See Am. Gen. Life Inc. Co. v. Broughton*, No. CV 06–0488S–MHW, 2008 WL 4977402, at *4 (D. Idaho June 3, 2008); *New York Life Ins. Co. v. Mitchell*, 528 P.3d 1269, 1281 (Wash. 2023).

[4] Ms. Kline averred that American General reviewed the police report for Bova's death. Dkt. No. 28-3 ¶ 18. Though the police report was not submitted in support of the instant motion, Ms. Kline avers that the report indicated that Bova's cause of death was acute drug intoxication including phencyclidine (PCP). *Id.*

Though Bova had denied ever using tobacco in his July 23, 2020 Application, notes in medical records from the Highline Medical Center Emergency Department dated March 2, 2019 (Dkt. No. 28-3 at 30), June 9, 2019 (*id.* at 38), April 27, 2020 (*id.* at 58), June 19, 2020 (*id.* at 68), October 2, 2020 (*id.* at 190), and October 13, 2020 (*id.* at 200) show Bova's self-reported tobacco use status as an "every day smoker" of cigarettes. *See also id.* at 96 (2017 medical record noting tobacco use). Several of these records also note "nicotine dependence." *See, e.g.*, *id.* at 43, 53, 74.

Similarly, with respect to drug use, which Bova denied on his Application, medical records from June 2019 reflect that Bova reported using cannabis daily, including smoking marijuana that may have been laced with PCP on at least one occasion. Dkt. No. 28-3 at 158–159, *see also id.* at 189 (October 2, 2020 medical record). During an emergency room visit on October 13, 2020, Bova again indicated that he used cannabis and PCP, and that he had last used PCP on October 1, 2020. *Id.* at 200.

In his Application, Bova had also denied ever having been convicted of a felony or misdemeanor. However, his criminal history records revealed convictions for numerous misdemeanors and felonies during the years 1999–2019, including criminal trespass, burglary, theft, assault, and drug possession.[5] *See* Dkt. No. 28-3 at 229 (Washington State Patrol summary of convictions); 210–225 (Accurint criminal history records). Bova had also denied consulting a member of the medical profession within the five years predating his Application, but his medical records document numerous emergency room visits for various illnesses and injuries in the period of 2017–2020. *Id.* at 27–208.

[5] Though American General also takes issue with evidence of convictions for Driving Under the Influence, Bova's criminal history report indicates these convictions occurred in 2010 and 2011. Dkt. No. 28-3 at 217–220, 225. Part A of Bova's insurance Application only sought information about driving violations in the five years preceding Bova's July 23, 2020 Application. *Id.* at 12.

As a component of the contestable claim review, on July 22, 2022, American General underwriting specialist Joan Kline prepared an "Underwriting Opinion Memo" summarizing the information obtained from the medical and criminal records. Dkt. 28-3 at 23. Kline noted that "[h]ad the tobacco use history been divulged on these documents, the application would have been approved no better than Standard Tobacco, rather than Standard Plus Non-tobacco." *Id.* Ms. Kline further concluded that had American General "known this information on either the criminal offense convictions or the illegal drug use, we would have declined this application." *Id.* at 25.

On February 2, 2023, American General filed this action seeking declaratory relief and recission of the Policy. Dkt. No. 1 at 9–10. Defendant Palmer, proceeding pro se, filed what she asked the Court to consider an answer to the complaint. *See* Dkt. Nos. 4, 5, 6. During the course of discovery, on August 30, 2023, American General served a set of requests for admission to Palmer. Dkt. No. 28-2 ¶ 2, at 3. Palmer acknowledged receipt of the requests but did not otherwise respond to them. *Id.* ¶¶ 3–4. The requests sought admissions regarding Bova's completion of the life insurance Application, including that he knowingly provided answers that were not accurate, complete, or truthful (*id.* at 8–9). They also sought admissions regarding the details of the Policy, including that it contained a two-year contestability period (*id.* at 8), and admissions that American General is entitled to the relief it now seeks. *Id.* at 10.

On November 30, 2023, American General filed a motion for summary judgment. Dkt. No. 18. This Court denied the motion without prejudice because it was not sufficiently supported by documentary evidence reflecting the conclusions in the contested claim review. Dkt. No. 27. Consistent with the Court's order, American General filed a renewed motion for summary judgment on June 7, 2024, supported by a declaration including Bova's medical records and criminal history. Dkt. Nos. 28, 28-3. Palmer did not respond to the renewed motion. *See* Dkt. No. 29.

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); Fed. R. Civ. P. 56(e). In determining whether an issue of fact exists, the Court reviews all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).

The moving party, here, American General, bears the initial burden of showing that there is no evidence supporting an essential element of the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323 (cleaned up). "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2nd Cir. 2014); *see also Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013).

"Rescission under Washington law is governed by RCW 48.18.090. The statute contains two subsections, the first pertaining to 'oral and written misrepresentation[s] … made in the negotiation of an insurance contract,' and the second to statements made in writing by the insured in an application for life or disability insurance." *Karpenski v. Am. Gen. Life Cos., LLC*, 999 F.

Supp. 2d 1235, 1243 (W.D. Wash. 2014) (quoting WASH. REV. CODE § 48.18.090). The second section, at issue here,[6] provides:

> In any application for life or disability insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

WASH. REV. CODE § 48.18.090(2). Accordingly, to rescind an insurance contract under this section, a plaintiff must first establish that a false statement was knowingly made on the part of the insured. *Karpenski*, 999 F. Supp. 2d at 1243 (citing *Nw. Mut. Life. Ins. Co. v. Koch*, No. C08–5394-BHS, 2009 WL 3346677 at *7 (W.D. Wash. 2009), *vacated in part on other grounds*, 2009 WL 3674526 (W.D. Wash. 2009) (citing *Oregon Nat. Life Ins. Co. v. Superior School Photo Serv., Inc*., 462 F.2d 1235, 1236 (9th Cir.1972)). "Once false statements have been shown, the insurer seeking to rescind must establish that the false statements were made with either (1) actual intent to deceive, or (2) that they materially affected either the acceptance of risk or the hazard assumed by the insurance company." *Id.* at 1244.

American General argues it is entitled to recission of the Policy on both grounds. Dkt. No. 28-1 at 22. Specifically, American General contends that Bova made false statements that materially affected its acceptance of the risk, and that such statements were made with actual intent to deceive. For the reasons below, the Court finds American General prevails under both theories.

[6] American General states "[n]o oral or written negotiations took place that would trigger the additional requirements of RCW 48.18.090(1)." Dkt. No. 28-1 at 18. While previous filings by Palmer in this action allege conversations "took place behind the scenes" (*see* Dkt. No. 21 at 1; Dkt. No. 26 at 1), Palmer alleges these calls were between herself and American General after issuance of the Policy. Therefore, these calls were not part of the negotiation of the Policy between American General and Bova, and do not trigger the additional requirements of RCW 48.18.090(1). *See Karpenski*, 999 F. Supp. 2d at 1243.

## III. ANALYSIS

### A. Bova Knowingly Made False Representations in His Application for Life Insurance.

As detailed above, the unrebutted record reveals Bova misrepresented his tobacco and drug use, as well as his medical and criminal history, on his Application. Moreover, many occasions of drug use and emergency room visits occurred contemporaneously with Bova's Application in which he denied the same. For example, though Bova denied ever having used tobacco when he filled out the Application in July 2020, his medical records from emergency room visits in April and June 2020 indicated that Bova was an everyday smoker with nicotine dependence. Dkt. No. 28-3 at 58, 63, 68, 74. Similarly, though Bova signed his Policy Acceptance form on November 2, 2020, averring that no information had changed since his July 23, 2020 Application, including that he had not consulted any medical providers, his medical records reflect otherwise. Specifically, in October 2020, just weeks before he signed the Policy Acceptance, he visited the emergency room more than once, and reported using marijuana and PCP. *Id.* at 189, 200. Palmer has submitted nothing to rebut the information Bova self-reported in his medical records.[7] Nor has she challenged the other records reflecting at least 17 undisclosed emergency room visits and an extensive criminal history.

Courts have found knowing misrepresentations where an insured attests to the truth of their representations. *Karpenski*, 999 F. Supp. 2d at 1247; *Koch*, 2009 WL 3346677, at *7. Here, it is undisputed that when Bova signed the Application, he represented in multiple places and on multiple dates the truthfulness of the information it contained. Dkt. No. 28-3 at 13, 19, 21. American General has submitted substantial documentary evidence contradicting Bova's specific

[7] Additionally, Request for Admission No. 43 states "[a]dmit that Bova knowingly failed to accurately, honestly, completely, and/or truthfully answer and disclose material information in response to questions on the written life insurance application for the Policy, including on Part A and Part B." Dkt. No. 28-2 at 9. Because Palmer did not respond, this statement is deemed admitted. Fed. R. Civ. P. 36(a)(3).

denials related to his tobacco and drug use, medical background, and criminal history. Palmer has failed to introduce any contradictory evidence, and therefore has not raised a genuine issue of material fact as to whether Bova knowingly made false representations on his life insurance Application.

**B. Bova's Misrepresentations Materially Affected American General's Acceptance of the Risk.**

American General may rescind Bova's coverage by establishing that his written misrepresentations were material. "Materiality is determined from the standpoint of the insurer, not the insured." *Ki Sin Kim v. Allstate Ins. Co*., 223 P.3d 1180, 1188–89 (Wash. Ct. App. 2009), *as amended* (Jan. 6, 2010) (citing *Onyon v. Truck Ins. Exch.*, 859 F. Supp. 1338, 1342 (W.D. Wash. 1994)). "A misrepresentation is material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented." *Id.* at 1189 (cleaned up). Once a representation is shown to be false, "three separate means exist" to establish the false statement was material: (1) the representation influenced the insurance company's decision to issue coverage; (2) the information measures the risk; and (3) when an insurer specifically asks information in regard to a certain matter. *Koch*, 2009 WL 3346677, at *7. "While materiality is generally a mixed question of law and fact, it may be decided as a matter of law 'if reasonable minds could not differ on the question.'" *Onyon*, 859 F. Supp. at 1341 (quoting *Long v. Ins. Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir.1982)).

Here, materiality is established under at least the first and third means discussed in *Koch.* First, American General's underwriting specialist testified that the misrepresented and omitted information influenced the company's decision to issue coverage. Specifically, Ms. Kline averred that

> [t]he misrepresentations made by Bova on the application for the Policy, including Part A and Part B, were material to American General and material to the risk

> assumed by American General under the Policy. If American General had known the true facts at the time of underwriting the Policy, American General would not have issued the Policy.

Dkt. 28-3 ¶¶ 21–22. Second, the insurance Application asked specific questions about Bova's drug and tobacco history, past emergency room visits, and criminal history. Where an application seeks specific information, materiality is presumed. *Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 1003 (W.D. Wash. 2004). Further, Bova's medical and criminal history are "facts that a reasonable insurance company would have found important" with respect to the issuance of a life insurance policy. *See Ki Sin Kim*, 223 P.3d at 1190.

Here, Palmer does not contest American General's claimed reliance on the misrepresented information. Nor does she rebut the presumption of materiality with respect to the specific questions pertaining to tobacco use, drug use, criminal history, and medical visits. In light of the undisputed record, the Court finds Bova's misrepresentations are material, and that reasonable minds could not differ on this conclusion. *See Onyon*, 859 F. Supp. at 1341. Accordingly, American General has met its burden to show it is entitled to summary judgment on the grounds that, as a matter of law, Bova knowingly made misrepresentations on his Application for insurance and such misrepresentations materially affected American General's assumption of risk.

**C. Bova's False Statements Were Made with the Intent to Deceive.**

Alternatively, American General argues it is entitled to recission because Bova's false statements were made with an intent to deceive. "Proof that a material false statement was made knowingly raises the presumption that it was made with intent to deceive." *Karpenski*, 999 F. Supp. 2d at 1244; *Ki Sin Kim*, 223 P.3d at 1189. To overcome this presumption, a party must "provide some credible evidence that the false representations were not made with intent to deceive." *Karpenski*, 999 F. Supp. 2d at 1244; *Ki Sin Kim*, 356, 223 P.3d at 1189 ("The insured's bare assertion that she did not intend to deceive the insurance company is not credible evidence of

good faith and, in the absence of credible evidence of good faith, the presumption warrants a finding in favor of the insurance company.”).

As detailed above, the Court finds that American General put forth sufficient information to demonstrate that Bova knowingly made false statements in his insurance Application. The Court therefore presumes Bova’s false statements were made with the intent to deceive. Palmer has not put forth any evidence that rebuts this presumption, and has, in fact, admitted as much by failing to respond to American General’s requests for admission. Accordingly, the Court finds American General is entitled to summary judgment.

## IV. DECLARATORY RELIEF

Because American General is entitled to summary judgment on its recission claim, the Court also grants American General’s request for a declaratory judgment that the Policy is void. American General has no further obligation to Palmer, except to return the premiums paid on the Policy.

## V. CONCLUSION

American General’s motion for summary judgment (Dkt. No. 28) is GRANTED. The clerk is directed to close the case.

Dated this 3rd day of September, 2024.

Kymberly K. Evanson
United States District Judge